**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

CREDIT ACCEPTANCE CORPORATION,

          Plaintiff,

v.                                      CIVIL ACTION NO.  2:10-cv-00003

ANDREW LONG, and,
CHRISTINA LONG,

          Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendants' Motion to Dismiss the Petition to Compel Arbitration [Docket 3].  A parallel case was originally filed in the Circuit Court of Jackson County, West Virginia, on April 22, 2009.  Plaintiff filed the Petition to Compel Arbitration [Docket 1] in this Court on January 4, 2010, seeking to force arbitration under the Federal Arbitration Act.  Defendant now alleges that the Court lacks subject matter jurisdiction to grant the Petition because the amount in controversy required for federal diversity jurisdiction has not been met.  For the reasons stated below, Defendants' Motion to Dismiss is **GRANTED**.

*I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY*

The facts giving rise to this case, as alleged by the state court complaint, are as follows.  On August 25, 2008, Defendants Andrew and Christina Long signed and delivered a retail installment contract for the purchase of a vehicle to Randolph Pre-Owned Auto Sales, LLC ("Randolph Auto").  Defendants financed the vehicle purchase through Credit Acceptance Corporation ("CAC"), and Randolph Auto assigned all its rights in the contract to CAC.  In their state court complaint,

Defendants allege that Randolph Auto and Brian Randolph violated the West Virginia Consumer Credit Protection Act ("WVCCPA"), the Uniform Commercial Code, and West Virginia common law. (Ex. B to Docket 1 at 3.) Specifically, Defendants allege (1) that they were misled about the price of the vehicle at the time of the sale, (2) that they were convinced to purchase a service contract that proved inadequate, (3) that they were misled about the vehicle's condition, and (4) that the vehicle did not conform to express and implied warranties made by Randolph Auto. The Longs' state court complaint incorporates CAC as a defendant because, by operation of the WVCCPA's assignee liability provision, CAC "is subject to all claims and defenses [the Longs] have against Randolph Auto." (*Id.*) The Longs do not assert that CAC is directly liable for any of their statutory or common law allegations.

CAC filed its Petition to Compel Arbitration in this Court on January 4, 2010. In the Petition, CAC alleges that Defendants' claims are subject to an arbitration clause contained in the sales contract. The arbitration clause at issue expressly states that any dispute arising under the agreement is governed by the Federal Arbitration Act. (*Id.* at 10.) Contending, among other things, that the Court lacks subject matter, Defendants filed the current motion to dismiss.

## II. DISCUSSION

*A.     Subject Matter Jurisdiction*

The relevant provision of the Federal Arbitration Act provides:

> A party aggrieved by the alleged . . . refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court, which, save for such agreement, would have jurisdiction under Title 28, in a civil action . . . of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4. Section 4 permits a district court to compel arbitration only when the court would otherwise have subject matter jurisdiction over a suit on the underlying dispute. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n.32 (1983). The Federal Arbitration Act does not provide an independent basis for exercising federal jurisdiction; instead, either diversity of citizenship or some other independent basis for federal jurisdiction must be established. *See Discover Bank v. Vaden*, 396 F.3d 366, 372-73 (4th Cir. 2005); *Owens-Illinois, Inc. v. Meade*, 186 F.3d 435, 439 (4th Cir. 1999).

United States "district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a)(1). It is well-established that the party seeking the exercise of federal jurisdiction must allege facts essential to demonstrate jurisdiction and overcome any subsequent challenges to the exercise of jurisdiction. *See McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 188-89 (1936). In satisfying that burden, the plaintiff must both "allege with sufficient particularity the facts creating jurisdiction" and, if challenged, facts "to support the allegation." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938).

When a case is originally filed in federal court, jurisdiction is proper where the parties are diverse "unless it appears to a legal certainty that the claim is really for less than the jurisdictional amount." *Landmark Corp. v. Apogee Coal Co.*, 945 F. Supp. 932, 935 (S.D. W. Va. 1996) (Copenhaver, J.) (citing *St. Paul Mercury*, 303 U.S. at 289) (internal quotation marks and alterations omitted). Furthermore, in considering a suit to compel arbitration, the jurisdictional amount in controversy must be determined "by reference to the possible award resulting from the arbitration," not the possible recovery in any underlying state court proceeding. *Delta Fin. Corp. v. Paul D.*

3

*Comanduras & Assocs.*, 973 F.2d 301, 304 (4th Cir. 1992). In sum, although they do not bear the burden of proof, if Defendants are able to demonstrate to a legal certainty that their recovery in arbitration will not exceed $75,000, the Court may not exercise jurisdiction to compel arbitration.

As stated, because the present suit is not a removal action, but an independent federal lawsuit initiated by Plaintiff's Motion to Compel Arbitration, it is the stakes of the arbitration and not any possible recovery in state court that controls the Court's amount in controversy analysis. *See We Care Hair Dev., Inc. v. McCollum*, 180 F.3d 838, 841-42 (7th Cir. 1999). It is thus necessary to determine the stakes of the arbitration, and particularly what kind of damages and in what amounts the Defendants stand to recover from CAC in its capacity as assignee of the contract. On this basic point, the parties cannot agree. CAC argues that, in addition to multiple violations of the WVCCPA, the arbitration would include common law claims of fraud and misrepresentation, as well as attorneys' fees, punitive damages, and other damages mentioned in the Longs' complaint. Weaving a detailed discussion, CAC concludes that these damages very likely exceed $75,000. (Docket 5 at 4-11.)

In contrast, the Longs argue that provisions of the WVCCPA and the contract between the parties limit the amount of recovery available in the arbitration, absolutely precluding the amount in controversy requirement from being reached in this case. Specifically, Defendants contend that both the contract and W. Va. Code § 46A-2-102(1) provide that CAC, as assignee of the contract, stands in the shoes of the seller and is subject to all claims the Longs may assert against the seller, *but only up to the limit of liability under the contract and the statute*. The contract limits

4

Defendants' recovery to "amounts paid by the debtor [under the contract]." (Ex. A to Docket 1 at 2.)[1] W. Va. Code § 46A-2-102(1) states in relevant part:

> [A]n asignee of any . . . contract . . . shall take and hold such . . . contract . . . subject to all claims and defenses of the buyer . . . against the seller . . . arising from that specific consumer credit sale . . . but the total of all claims and defenses which may be asserted against the assignee under this subsection . . . shall not exceed [1] the amount owing to the assignee at the time of such assignment except . . . as to any claim . . . founded in fraud . . . [in which case] the total sought shall not exceed [2] the amount of the original obligation under the instrument . . . and any excess charges and penalties recoverable under [§ 46A-5-101].

Because the Longs allege fraud on the part of the seller in their complaint, they contend that the second limitation applies to this case, and that the total arbitration recovery cannot exceed the amount of the original obligation under the contract plus any statutory penalties provided in § 46A-5-101 of the WVCCPA.

Getting to the heart of the dispute, CAC retorts that § 46A-2-102(1) serves to limit only those allegations of wrongdoing that fall under the WVCCPA. The Longs' common law claims of fraud, misrepresentation, and negligence against the original seller are not subject to the limited liability provisions of the contract or § 46A-2-102(1), CAC argues. Because the Court's amount in controversy analysis depends heavily on whether the limited liability provision in § 46A-2-102(1) applies to all claims the Longs might raise against the seller or just those originating in the WVCCPA, further discussion is warranted.

The WVCCPA is a "comprehensive consumer protection" law that incorporates elements of the Uniform Consumer Credit Code, the National Consumer Act, and older West Virginia

---

[1] Because the parties focus on the liability limitation contained in the WVCCPA rather than the contract, the Court does so as well. This is of no consequence because the limitation under the contract could only result in a lesser recovery for the Longs.

5

statutes. *Casillas v. Tuscarora Land Co.*, 412 S.E.2d 792, 794 (W. Va. 1991). While never having addressed the exact issue in this case, the Supreme Court of Appeals of West Virginia has held that common law fraud may be maintained against a lender, assignee, or holder of a contract where there are *direct* allegations of fraud or negligence, *separate* from the WVCCPA. *See id.* at 795 (emphasis added). In *Casillas*, the plaintiffs contracted to purchase a parcel of land in Morgan County, including a chalet to be constructed thereon, from Tuscarora Land Company. *Id.* at 793. To finance the sale, the plaintiffs executed a note, which was assigned by Tuscarora to First National Bank. *Id.* Prior to purchasing the lot, the plaintiffs inquired of Tuscarora as to whether the property was located in a flood plain and whether the property had previously flooded. They were assured that no flooding had occurred on the premises. *Id.* When the property flooded some years later, the plaintiffs sued both the Tuscarora Land Company (assignor) and First National Bank (assignee), alleging breach of duty, common law negligence and concealment, and common law fraud against the bank. *Id.* Importantly, the plaintiffs did not file suit under the WVCCPA, and they alleged direct misconduct by the assignee of the instrument—the bank. In defending the lawsuit, First National Bank argued that the plaintiffs could not bring their common law claims in addition to the WVCCPA, which controlled the situation in the case. The trial court agreed with the bank, and entered a directed verdict.[2]

On appeal, the Supreme Court of Appeals of West Virginia reversed the trial court, and allowed the plaintiffs to maintain their common law claims against the assignee bank. In so holding, the court stated that the WVCCPA "does not preclude claims brought at common law against

---

[2] The provision First National Bank relied on in *Casillas* provided complete immunity to lenders and assignees for personal injuries arising out of property damage. In this case, the WVCCPA does not provide complete immunity, but limits the amount of an assignee's liability.

assignees, holder [sic], or lenders." *Id.* at 795. In a footnote immediately following that statement, however, the court recited a number of WVCCPA provisions that limit assignee and lender liability under the WVCCPA. This Court interprets the juxtaposition of those concepts to mean that common law claims and defenses are not altogether precluded by the WVCCPA, but that liability under those common law theories may be limited by it. The *Casillas* court also emphasized that the plaintiffs were alleging direct misconduct by the bank in their common law fraud and misrepresentation claims; they were not alleging misconduct by the Tuscarora Land Company and attempting to recover against the bank under a derivative liability theory, as allowed by the WVCCPA. On point for purposes of this case, the court stated: "The [WVCCPA] controls recoveries that can be obtained by a consumer against an assignee, a lender, or a holder by subjecting them to the claims and defenses that the consumer has against the seller. Nothing within the [WVCCPA] limitation of liability provisions provides immunity at common law for the [direct] misconduct of a lender, assignee, or holder. . . ." *Id.*

From these statements, and its independent reading of the law, the Court is confident that the West Virginia legislature intended all claims against an assignee deriving from the wrongdoings of the original seller to a consumer transaction be limited as provided in § 46A-2-102(1). By its plain words, § 46A-2-102(1) subjects assignees to "*all claims* and defenses of the buyer . . . against the seller . . . arising from that specific consumer credit sale." W. Va. Code § 46A-2-102(1) (emphasis added). Section 102(1) then goes on to limit the assignee's liability for those claims to either (1) the amount owed at the time of assignment or (2) if fraud is involved, the amount of the original obligation plus statutory damages. A plain reading of the section produces the conclusion that *all* derivative claims against the assignee—that is, all claims against the seller for which the assignee

7

is not directly at fault—are limited by § 46A-2-102(1). The *Casillas* court provided firm footing for this Court's reading of the statute. There, the court permitted common law claims to proceed against the assignee for direct allegations of fraud and other misconduct, but it plainly stated that the WVCCPA controls recoveries that can be obtained against an assignee only by virtue of claims the consumer has against the original seller. In light of the above analysis, the Court finds that the Longs' common law claims—because they are not directly asserted against CAC—are limited by the WVCCPA, and the Longs are entitled to recover only the amount of the original obligation plus statutory penalties at any arbitration the Court may order.[3]

    *B.    Original Obligation*

The amount of the original obligation to CAC, as evidenced by the sales contract attached to CAC's petition, is $11, 267.52. The parties appear to be in agreement that, because the amount in controversy calculations are exclusive of interest, 28 U.S.C. § 1332(a)(1), the finance charge must be subtracted from that total. The resulting total is $8,090.80.[4] The Longs further argue that they cancelled a service contract on the vehicle, which resulted in a refund to CAC of approximately $800. For purposes of calculating the amount in controversy in this case, that refund will be disregarded.[5]

---

[3] There is one exception, as discussed *infra*. Because the Longs are seeking attorneys' fees pursuant to a different statute, those fees may be appropriately considered in the amount in controversy calculation.

[4] $11,267.52 (total obligation) less $3,176.72 (financing charge).

[5] The Court has received no evidence of the refund, and CAC has not acknowledged it in any of its pleadings. As such, the Court cannot exclude that amount from its calculations at this time.

C.  *West Virginia Consumer Credit and Protection Act Violations*

The second component of the Longs' potential arbitration recovery is statutory penalties recoverable under the WVCCPA. Among the numerous provisions of the WVCCPA are restrictions on unfair and deceptive practices, unconscionable and fraudulent conduct, and breaching express or implied warranties—all of which have been alleged by Defendants in this case. *See, e.g.*, W. Va. Code §§ 46A-6-104 & 46A-2-314.

Violations of WVCCPA are punishable by various civil or criminal penalties. *Id*. §§ 46A-5-101 to -105. Under the WVCCPA, debtors who have been subjected to unfair and deceptive practices may recover "actual damages or two hundred dollars, whichever is greater" for each instance of unlawful conduct. *Id.* § 46A-6-106; *see also id.* § 46A-6-104 (defining unfair and deceptive practices as unlawful under the WVCCPA). The same remedy—actual damages or two hundred dollars, whichever is greater—is available to debtors who were subjected to breach of express or implied warranties. *Id.* § 46A-6-106; *see also id.* § 46A-6-108 (prohibiting breach of warranty). In addition, the WVCCPA provides a cause of action against creditors who have engaged in "illegal, fraudulent or unconscionable conduct," the statutory penalty for each violation being approximately $4,300.[6] *Id.* § 46A-5-101(1). Debtors also may recover attorneys' fees for any claims brought under the WVCCPA "applying to illegal, fraudulent, or unconscionable conduct." *See id.* § 46A-5-104.

---

[6] Section 46A-5-101(1) provides that the aggrieved debtor may recover his actual damages and a statutory penalty of "not less than one hundred dollars nor more than one thousand dollars." W. Va. Code § 46A-5-101(1). The maximum penalty of $1000 was set as of 1974 and indexed to the consumer price index published by the United States Department of Labor. In its discretion, the Court may adjust that figure to account for inflation, yielding a maximum adjusted statutory penalty of $4,268.16. *See id.* § 46A-5-106.

While the penalties for each violation are fairly straightforward, the parties cannot agree on how many violations the Longs alleged in their complaint. CAC argues that the complaint alleges 11 violations of the WVCCPA—eight violations of the unfair and deceptive acts provisions, two violations of the warranty provisions, and one violation involving unconscionability. (Docket 1 at 4-5.) The Longs contest this characterization of their complaint in a footnote, arguing that, while CAC assumes eleven separate violations of the WVCCPA, at most four separate and distinct violations are discernible from the complaint. (Docket 4 at 9-10 & n.6.) As an example, the Longs submit that their unconscionability claim overlaps with one of the unfair practices claims, both of which revolve around alleged misrepresentation regarding the cost of the vehicle.

The Court finds the Longs' reasoning persuasive. The WVCCPA creates a single cause of action to recover a single penalty for each violation. For example, in a similar case alleging prohibited debt collection practices, a plaintiff asserted that each of approximately thirty phone calls made by the defendant amounted to two separate violations of the WVCCPA. *See Sturm v. Providian Nat'l Bank*, 242 B.R. 599, 602-03 (Bankr. S.D. W. Va. 1999). The court disagreed, emphasizing that each instance of misconduct creates only a single cause of action to recover a single penalty. In other words, each phone call could amount to only one recovery under the WVCCPA, regardless of whether it technically violated a number of provisions. *See id.*; *see also Grubb v. Jos. A. Bank Clothiers, Inc.*, 2005 WL 1378721, at \*6 n.5 (S.D. W. Va. June 2, 2005) (questioning overlapping WVCCPA violations set forth by plaintiff). It is striking that, although the complaint does not set forth an exact number of alleged WVCCPA violations and the record reveals little or no evidence as to how many violations are alleged, the Plaintiff assumes eleven violations. For instance, in arguing that eight violations of the unfair practices provisions are alleged, Plaintiff

mistakenly points to a paragraph of Defendants' state court complaint that enumerates each way in which the seller's conduct met the statutory definition of an "unfair or deceptive act." That portion of Defendants' complaint did not allege eight separate violations of the WVCCPA; it explained how the seller's conduct could variously amount to a violation or violations of the WVCCPA.

In its review of the state court complaint, the Court is in agreement with the Longs that four violations of the WVCCPA are potentially at issue in any future arbitration. First, the Longs allege they were misled about the price of the vehicle. (Docket 1-1 at 7, ¶ 13-14.) Second, the Longs allege they were misled about the coverage of the service contract. (*Id.* ¶ 15-16.) Third, the Longs allege that the seller promised to have a problem with the air bag repaired under the services contract, but the problem was not repaired. (*Id.* ¶ 17-18.) Fourth, the Longs allege that the vehicle did not conform to express and implied warranties. (*Id.* at 8, ¶ 20.) For amount in controversy purposes, the Court assumes without deciding—as the Longs argue and CAC apparently accepts in its response (Docket 5 at 6-7)—that each of these four WVCCPA violations entitles the Longs to the maximum statutory penalty of $4,268.16.[7] The recoverable statutory penalties at issue in any arbitration, then, total $17,072.64.

### D. *Other Damages*

CAC additionally alleges that the amount in controversy must include attorneys' fees and "actual, punitive, and consequential and incidental damages" related to the common law claims. As stated previously, any actual damages related to the Longs' common law claims are limited by the

---

[7] It is unclear from the layout of the WVCCPA and the wording of the relevant statutes whether a violation of Article 6—which includes any unfair practices and warranty violations—triggers Article 5 statutory penalties ($4,268.16) or is confined to "actual damages or two hundred dollars, whichever is greater" as provided by § 46A-6-106.

WVCCPA, at least as they pertain to CAC. Similarly, an award of punitive damages against CAC would be limited by the WVCCPA.[8] Even if the Court were so inclined to include actual and punitive damages in the amount in controversy, Plaintiff has assumed an arbitrary amount of actual damages and used the maximum permissible multiplier to calculate punitive damages. There is no evidence in the record of any actual damages suffered by the Longs to support an award of over $30,000 in actual and punitive damages

CAC also argues that attorneys' fees must be included in the amount in controversy calculation. Although attorneys' fees generally do not constitute part of the amount in controversy, when a statute or contract specifically makes recovery of attorneys' fees available, they will be included in the amount in controversy. *See, e.g.*, *Saval v. BL Ltd.*, 710 F.2d 1027, 1033 (4th Cir. 1983); *Patton v. Fifth Third Bank*, No. 2:05-790, 2006 WL 771924, at *3 (S.D. W. Va. Mar. 24, 2006). Because the Longs seek attorneys' fees pursuant to the Magnuson-Moss Warranty Act and the WVCCPA, those fees may properly be included in the amount in controversy calculation. *See Dunlap v. Green Tree Servicing, LLC*, No. 2:05-0311, 2005 WL 3177881, at *5 (S.D. W. Va. Nov. 28, 2005). However, as the Longs point out, it is unclear whether the recovery of attorneys' fees from the assignee of a contract is capped by the limited liability provisions in the WVCCPA. Even assuming attorneys' fees are fully recoverable against CAC as assignee of the contract, CAC admits that "it is impossible to say with precision what the attorney's fees in this case will be," thus undermining its own assertion that $25,000 is an appropriate estimate. (Docket 1 at 6-7.) Based on

---

[8] The Court emphasizes that its statements regarding recovery of actual and punitive damages are limited to recovery against the assignee of the contract, and not against the original assignor/seller.

the Court's review of similar cases, however, it accepts for the current purpose Plaintiff's estimate of $25,000 in attorneys' fees.

Finally, Plaintiff mentions in passing the "consequential and incidental damages" referred to in the Longs' complaint. CAC makes no attempt to quantify these damages, simply asserting that "to the extent they are brought pursuant to claims arising under statutes or common law other than the WVCCPA," these damages must be included in the amount in controversy. CAC makes no attempt to carry its burden of establishing the jurisdictional amount in controversy is met as these damages pertain to it.

### E. *Summary of Amount in Controversy*

Applying West Virginia precedent, the Court concludes that the Longs are entitled to recover from CAC only the amount of the original obligation plus statutory penalties at any arbitration the Court may order. The original obligation is, at most, $8,090.80. Statutory penalties for the violations alleged in the state court complaint cannot exceed $17,072.64. In addition, assuming that attorneys' fees are fully recoverable from the assignee of a financing contract, the Longs stand to recover approximately $25,000 according to CAC. Thus, from the record before it, the Court determines that the total amount in controversy is at most $50,163.44. Without joining the original assignor of the contract to this suit, the Longs' actual and punitive damages related to their common law claims cannot exceed the amounts provided by W. Va. Code § 46A-2-102(1).

### III. CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss [Docket 3] is **GRANTED**.
**IT IS SO ORDERED.**

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

                ENTER:       September 22, 2010

                _____
                THOMAS E. JOHNSTON
                UNITED STATES DISTRICT JUDGE